UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
JEROME DORFMAN,                                           MEMORANDUM
                              Plaintiff,                  & OPINION


                                                          03CV573(SLT)(WDW)

                   -against-



DOAR COMMUNICATIONS, INC.,

                              Defendant.
---------------------------------------------------X
TOWNES, U.S.D.J.

        In this action, Plaintiff Jerome Dorfman ("Dorfman" or "Plaintiff"), an attorney

appearing *pro se*, has asserted claims alleging that his former employer, Doar Communications,

Inc., ("DOAR" or "Defendant") discriminated against him in violation of the Age Discrimination

in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, et seq.  Defendant moves for

summary judgment dismissing this action pursuant to Federal Rule of Civil Procedure 56(e) on

the grounds that Plaintiff has failed to state a prime facie case of discrimination, or, in the

alternative, that Plaintiff has failed to rebut Defendant's proffered legitimate non-discriminatory

reasons for his termination.  For the reasons set forth below, the Defendant's motion is granted.

I.       *Facts and Procedural History*

        In any motion for summary judgment brought in this District, the moving party is

required, pursuant to Local Rule 56.1(a), to submit a Statement of Material Facts that it contends

are in dispute.  The non-moving party then must, pursuant to Local Rule 56.1(b), set forth the

material facts that it believes are in dispute.  In this case, Plaintiff has failed to submit a 56.1

Statement.  Though parties appearing *pro se* are often afforded greater leeway in interpreting and

following Local Rules, Plaintiff is also an attorney licensed to appear before this Court, making

his failure to file a 56.1 Statement inexcusable, particularly given the number of extensions of

time granted to Plaintiff and his role in delaying resolution of this action.[1]  As such, we will treat

Defendant's 56.1 Statement as unopposed.

Plaintiff is a 59-year old attorney duly admitted to practice law in the State of New York,

Southern and Eastern Districts of New York, the United States Court of Appeals for the Second

Circuit and the United States Supreme Court for over 31 years.  (Dorfman Decl. ¶ 4.)   His

interest in computers caused him in June 2000 to apply for a job with Defendant, a court

technology and litigation support firm servicing various legal entities in both the public and

private sectors.  (Def. R. 56.1 Stat. ¶¶ 1, 6.)  At the time, Plaintiff was operating his own practice

and contemplating shutting down the practice.   (Def. R. 56.1 Stat. ¶ 5.)  To that end, he

responded to an advertisement Defendant placed in the New York Law Journal seeking a

Director of Litigation.  (Def. R. 56.1 Stat. ¶ 7.)  Plaintiff interviewed for the position and was

thereafter informed that Defendant was no longer filling the position.  (Def. R. 56.1 Stat. ¶ 9.)

Instead, Defendant offered Plaintiff a position as Senior Case Director, a lower-level position

---

[1] On June 30, 2004, Defendant served Plaintiff with its motion.  The parties' briefing
schedule required Plaintiff to respond by August 25, 2004. (Letter from Sigda to Court of
8/23/04).  After receiving no submission from Plaintiff, Defendant wrote to the Court on October
25, 2004 requesting that its motion be treated as unopposed on account of Plaintiff's failure to
respond to either the motion or Defendant's most recent attempt to contact him. (Letter from
Sigda to Court of 10/25/04.)  On January 21, 2005, the Court ordered Plaintiff to respond to the
motion by February 7, 2005.  (*See* Order of 1/21/05.)  On February 8, 2005, the Court granted
Plaintiff an additional one-day extension after he failed to arrive at the courthouse by 5:00p.m.
(*See* Order of 2/8/05.)

than Director of Litigation. (Def. R. 56.1 Stat. ¶ 10.) Plaintiff's employment with Defendant

began on April 2, 2001. (Def. R. 56.1 Stat. ¶ 14.)

In accepting the offer with Defendant, Plaintiff signed a letter outlining the terms of his

employment. (Dorfman Decl. Ex. J.) Plaintiff's job responsibilities included "new client

acquisition, developing case and presentation strategies, client management and facilitating the

utilization of DOAR's litigation support services." (Dorfman Decl. Ex J at 1.) Plaintiff agreed

to, *inter alia*, the following requirement: "For the above consideration, you agree to sign our

firm's non-disclosure and non-competition agreements as well as our employment handbook."

(Dorfman Decl. Ex J. at 2.) Defendant's employment handbook contains the following

provision:

> During the first 3 months of employment, new employees are closely scrutinized
> and will be terminated at any time the Company determines it is not in the best
> interest of the Company to continue the employment...All employees of DOAR
> are employed at will and may be terminated at any time without notice.

(Neale Aff. Ex. 2 at 23.)

During the first two months of Plaintiff's employment with Defendant, he was unable to

generate any business on his own. (Def. R. 56.1 Stat. ¶ 18; Dorfman Depo. Transcript ("Tr.") at

82-83, 85-86.) By early July, Defendant deemed Plaintiff's performance unacceptable and

attempted to terminate his employment. (Tr. 96-7.) Plaintiff met with Samuel H. Solomon,

Chairman and Chief Executive Officer ("CEO") of DOAR and explained that he believed he was

not offered a "fair opportunity to do anything" and that Solomon told him at the outset that "it

would take six months to, quote, get it, meaning to understand what the business of the company

is about and be able to function independently." (Tr. 97.) Solomon offered Plaintiff the

opportunity to talk with Paul J. Neale, Jr., who was at the time assuming responsibilities for the

Litigation Division.  (Tr. 97.)  Plaintiff met with Neale, again pleaded his case and was offered

the job of General Case Director, a position not requiring marketing responsibilities.  (Def. R.

56.1 Stat. ¶¶ 24-28; Tr. 96, 102-104.)    Plaintiff suffered a reduction in salary and was informed

that this second position was subject to an evaluation period, during which Plaintiff would be

given an "opportunity to prove that [he] could handle the work and show [his] worth to the

company."  (Tr. 109.)

In his capacity as General Case Director, Plaintiff was given two assignments involving

the preparation of electronic versions of a brief and reply brief. (Tr. 114-126.)  Plaintiff

described these assignments as being extremely arduous, necessitating his working for 28 hours

straight on one occasion, and 36 straight hours on a second occasion only two days thereafter.

(Dorfman Decl. ¶¶ 33-40.)  Notwithstanding the amount of time Plaintiff devoted to the projects

and the conditions under which he completed them, Defendant found his performance

unsatisfactory on account of his need for management intervention on each project.  (Def. R.

56.1 Stat. ¶¶ 30-31.)

*Plaintiff's Final Termination*

On August 2, 2001, Plaintiff met with Neale and DOAR's Director of Finance and was

informed that his employment was terminated.  (Def. R. 56.1 Stat. ¶ 34.)  Again, Plaintiff tried to

persuade Neale that the decision to fire him was an unfair one.  (Def. R. 56.1 Stat. ¶ 35; Tr. 129.)


Neale cited as reasons for Plaintiff's termination, *inter alia*, Plaintiff's need for assistance on the

electronic briefing project and failure to generate revenue.  (Dorfman Decl. ¶ 41.)  Plaintiff was

escorted out of the building without an opportunity to retrieve all of his belongings, including a

Velo-Bind machine that Defendant has, to date, failed to return to him.  (Dorfman Decl. ¶ 42.)

Plaintiff "[came] to the conclusion that they never intended to give him a chance to prove

[himself]" and filed the instant complaint (the "Complaint") on February 4, 2003. (Dorfman

Decl. ¶ 44.)  Defendant moves for summary judgment alleging that Plaintiff fails to show he is

qualified for the positions he held and fails to show evidence from which an inference of

discrimination can be drawn.

II.      *Discussion*

Summary judgment is appropriate where "there is no genuine issue as to any material

fact."  Fed. R. Civ. P. 56(c).  "A fact is 'material' for these purposes if it 'might affect the

outcome of the suit under the governing law."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d

Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).  To be "genuine," an

issue of fact must be supported by evidence "such that a reasonable jury could return a verdict

for the nonmoving party."  *Holtz*, 258 F.3d at 62.   Because the moving party bears the burden of

showing that there are no genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986), "a court must resolve all ambiguities and draw all reasonable inferences against [it]."

*Alston v. New York City Transit Authority*, 2003 U.S. Dist. LEXIS 21741, at \*4 (S.D.N.Y. 2003)

(*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

"[D]iscrimination claims are subject to the well-known burden-shifting analysis set forth

in *McDonnell Douglas*."[2]  *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).

Under *McDonnell*, if plaintiff is able to establish a prima facie case of age discrimination, the

burden then shifts to the employer.  *Id.*  If the employer can show a legitimate, clear, specific and

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

non-discriminatory reason for the adverse action, the plaintiff assumes a new burden, that of showing that the employer's proffered reasons are a pretext and that more likely than not, discrimination was the real reason for the adverse action. *Id.*

In order to state a prima facie case of age discrimination, Plaintiff must show "(1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (*quoting Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir. 1994)). There is no question that factors (1) and (3) are met in this case, leaving only the issues of whether Plaintiff was qualified for the positions he held and whether there is evidence of discriminatory animus.

A.      *Plaintiff's Qualifications*

"*McDonnell* requires only a minimal showing of qualification for the employment in question to establish a prima facie claim. Plaintiff need not demonstrate that [his] performance was flawless or superior...plaintiff must only show that []he possesses the basic skills necessary for performance of the job." *Branson v. Allen*, 2004 U.S. Dist. LEXIS 22135, at *14-15 (E.D.N.Y. Nov. 3, 2004) (Gleeson, J.) (citations and internal quotation marks omitted); *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) ("[W]e have long emphasized that the qualification prong must not be interpreted in such a way as to shift into the plaintiff's prima facie case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision."). "[A] plaintiff's failure to plead with some specificity [his] qualification for the position may prevent [him] from making out a prima facie case of discrimination." *Id.*

Plaintiff has sufficiently detailed his qualifications to meet the prima facie burden.  He is

a practicing attorney with some computer science background who ran his own law firm and

constructed a computer to handle his word processing needs. (Dorfman Decl. ¶ 4-5.)  However,

because Plaintiff admits having no marketing experience, his fitness for the Senior Case Director

position is questionable.   On the other hand, it cannot be said that he failed to allege

qualifications consistent with the General Case Director position and therefore, with respect to

this position, Plaintiff has met his prima facie burden.[3]

B.      *Evidence of Discriminatory Intent*

 "[C]ourts...must carefully distinguish between evidence that allows for a reasonable

inference of discrimination and evidence that gives rise to mere speculation and conjecture...An

inference is not a suspicion or a guess." <u>Bickerstaff v, Vassar College</u>, 196 F.3d 435, 558 (2d

Cir. 1999).  Plaintiff's brief cites almost no cases and his submissions contain no evidence from

which this Court can draw a reasonable inference of discrimination.  His allegations include,

*inter alia*, Solomon's remark that Plaintiff did not "fit the culture" indicates discrimination;

Plaintiff's alleged exclusion from a company event; Defendant's failure to issue him a proper

photo ID; and his belief that he was hired only to secure an account with a particular law firm

with whom Plaintiff had a connection. (Dorfman Decl. ¶¶ 9, 44, 49.)  Plaintiff testified in his

deposition that the basis for his claim is that "there is no other explanation" for these events than

---

[3] Had Plaintiff's claim otherwise survived Defendant's motion, it would be necessary to
parse those alleged discriminatory events arising during the period he served as Senior Case
Director from those occurring when he held the General Case Director position and consider
only those events occurring during Plaintiff's tenure as General Case Director, the only position
for which he has satisfactorily shown himself to be qualified.  However, because Plaintiff
nevertheless fails to make a prima facie showing of discriminatory animus, *see* § II(B), *infra*, it is
unnecessary to further distinguish his claims with respect to the two positions.

age discrimination. (Tr. 157.) However, these actions do not give rise to an inference of

discrimination. *See* *Slattery v. Swiss Reinsurane Am. Corp.*, 248 F.3d 87, 92 n.2 (2d Cir. 2001)

(refusing to consider remarks that were either "age-neutral on their face or 'stray remarks'

unrelated to [plaintiff's] discharge" in determining whether plaintiff had met his prima facie

burden); *Mars v. Serv. Now for Adult Persons*, 305 F. Supp. 2d 207, 214 (E.D.N.Y. 2004)

(Gershon, J.) (plaintiff's evidence that defendant made vague comments about "some people

complaining about old men driving vehicles" was insufficient to satisfy his prima facie burden);

*Pasha v. Mercer Consulting, Inc.*, 2004 U.S. Dist. LEXIS 1226, at *14-17 (S.D.N.Y. Feb. 3,

2004) (holding that a few "isolated and ambiguous" remarks, even when made by decision-

makers, could not support an inference that age discrimination played a part in the decision not

to hire plaintiff).

Citing *McDonnell*, Plaintiff also attempts to argue that Defendant has a history of age

discrimination. (Pla.'s Mem. of Law at 15-16.) Though "statistics as to [Defendant's]

employment policy and practice may be helpful to a determination" of whether a pattern of

discrimination exists, Plaintiff has presented no evidence (beyond his own beliefs and

inadmissible hearsay[4]) of the number of other employees over the age of 40 who were fired

and/or the overall number of employees fired as compared to those employees over age 40. 411

---

[4] Hearsay evidence is inadmissible on a motion for summary judgment. *See* *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be considered by trial court in ruling on [a] motion for summary judgment"); *Fridman v. City of New York*, 183 F. Supp. 2d 642, 646 n.2 (S.D.N.Y. 2002) (granting summary judgment where plaintiff submitted newspaper articles and a City Council hearing transcript and the out-of-court speakers "were neither under oath nor making admissions against their interests"); *Corrigan v. New York Univ. Med. Ctr.*, 606 F. Supp. 345, 348 (S.D.N.Y. 1985) ("Hearsay...cannot be used under Rule 56(e) to stave off summary judgment.").

U.S. at 805 (*quoting Jones v. Lee Way Motor Freight, Inc.*, 431 F.2d 245 (10th Cir. 1970) (finding statistics that no black drivers granted transfer in four-year period despite hundreds of eligible black employees sufficient establish prima facie case of discrimination)).

Essentially, Plaintiff complains that he made his best efforts under the circumstances, that he was not given a chance, that he may have been hired in order to score a particular account, that he completed a tremendous amount of work in a short period of time with no training and that he did so for a fraction of what Defendant charged for his services. As oppressive as Plaintiff may believe this work environment to have been, his alleged experiences do not implicate the ADEA in any way.

C.    *Legitimate Non-Discriminatory Basis for Termination*

Even if Plaintiff were able to state a prima facie case of discrimination, his claim would nevertheless fail for want of a rebuttal to the legitimate non-discriminatory reasons for his termination, to wit, his failure to generate revenue as Senior Case Director and his inability to complete the electronic briefs without management intervention. Having shown a "legitimate, clear, specific and non-discriminatory reason" for Plaintiff's termination, Defendant would in any event shift the burden to Plaintiff to show evidence indicating that the proffered reasons for his termination are a pretext for discrimination, a showing that Plaintiff is unable to make. *Murphy v. Bd. of Ed. of the Rochester City Sch. Dist.*, 273 F. Supp. 2d 292, 301 (W.D.N.Y. 2003).

III.    *Conclusion*

Plaintiff has failed to make a prima facie showing of age discrimination.  Like any

DOAR employee, Plaintiff was subject to a probationary period during which his performance

would be closely scrutinized and he could be terminated for any or no reason either during this

period or even thereafter.  There is no evidence whatsoever that his termination was related to

his age, and the incidents to which he directs the Court's attention show no indicia of

discrimination. Therefore, his ADEA claim must be dismissed.  Because no federal claims

remain, the Court also dismisses Plaintiff's pendent state law claims.


        **SO ORDERED.**




                                        _____S/_____
                                        SANDRA L. TOWNES
                                        UNITED STATES DISTRICT JUDGE



Dated:          August 2, 2005
                Brooklyn, NY